BONNER *vs.* McPHAIL.

In an action for slander, where the words spoken are not actionable in themselves, but they may become so by reference to the extrinsic circumstances in relation to which they were spoken, as that they were uttered of and concerning the plaintiff's testimony as a witness on the trial of a cause, the plaintiff must show that they were spoken in reference to a judicial proceeding, before a court or officer of competent jurisdiction.

It must be proved that the court or officer before whom the action was pending had jurisdiction of the subject matter of it, with power to administer an oath and to examine and take the testimony of the witness.

No referee should proceed a step in the exercise of his duties without a certi-

Bonner *v.* McPhail.

fied copy of the rule or order appointing him, in his hands. This is his commission, and without it he should not proceed to act. *Per* Brown, J.

The power of a referee to administer a judicial oath can only be derived from an order of the court appointing such referee. A memorandum "referred to L. K. M." made by the judge on his calendar, at the circuit, is not sufficient to constitute an order. An entry at least in the minutes of the court is required for that purpose.

Some action of the court, shown by its records, is necessary.

An order of reference, made after the report of the referee is filed, with the consent of both parties that it be entered *nunc pro tunc,* will not relate back, so as to give to an extra-judicial oath the effect of an oath legally administered, on which a charge of perjury can be sustained.

The city court of Brooklyn, being a court of special and limited jurisdiction, a referee appointed by it has no power to try a cause in the city of New York.

APPEAL from a judgment of the city court of Brooklyn. The plaintiff complained that while he was giving testimony in an action then pending in the city court of Brooklyn, and on trial in the city of New York, before L. K. Miller as referee, the defendant said, "to hear a man lie," and "you are a liar," meaning thereby to charge the plaintiff with perjury. The defendant, by his answer, denied that the words were uttered respecting the plaintiff's testimony then being given, or that he intended to impute perjury to the plaintiff; but alleged that the words spoken had reference to other testimony previously given in the case. The trial before the referee was on the 25th September, 1857, at his office in the city of New York. No order of reference had then been entered, nor was any such order entered until December 12th, 1857, (more than two months after the trial before the referee,) when an order of reference was entered *nunc pro tunc* as of the first Monday of March, 1857. On the trial of the present action, the plaintiff offered testimony to show that on the calendar of the city court for March term, 1857, a memorandum was made, in the handwriting of the judge of the court, in these words, "*referred to L. K. Miller.*" The defendant objected to the admission of this testimony, which objection was overruled, and the defendant excepted. The plaintiff having testified to the words alleged to have been spoken by the defendant,

and as to the testimony which the plaintiff was at the time giving, (on the trial before the referee,) when such words were spoken, and two witnesses having testified as to the words spoken, the plaintiff rested, and the defendant moved for a nonsuit, which was refused, and the defendant excepted. On the trial of the present case, it appeared that other testimony had been given at previous hearings in the action before the referee. The defendant (for the defense) was asked what had been testified to previous to the time when the alleged slanderous words were uttered, and objection being made, the question was not allowed, and the defendant excepted. The defendant was then asked of and concerning whom he spoke the alleged slanderous words, which question being objected to on the part of the plaintiff, the question was not allowed, and the defendant excepted.

*Joseph S. Ridgway*, for the appellant. I. The words charged are not actionable, *per se*, and no special damage is alleged or proven.

II. Perjury is not imputed by the words charged: (1.) Perjury is not charged in terms, nor is that the import of the words charged. Neither is false swearing thereby in terms charged; nor have the words charged a necessary reference or application to any alleged testimony of the plaintiff. Some of the words charged do not in terms or necessarily apply to the plaintiff. (2.) No order of reference had at the time of the alleged slander (September 25, 1857) been made or entered in the action, in which the complaint alleges the plaintiff was giving testimony under oath, and of and concerning which said alleged testimony the complaint alleges the words charged were uttered. In December, 1857, the attorney for the respective parties in the action referred to, consented that an order be entered, *nunc pro tunc*, referring the issues in that action to L. K. Miller, Esq. as referee, to hear and determine; and no order had, prior to the time of said consent in December, 1857, been made or entered. The power and authority of a referee

Bonner *v.* McPhail.

to hear and determine and to administer an oath or affirmations to witnesses upon the hearing of a cause, is, under the statute, derived from and depends solely and entirely upon the order of the court in which the action is pending appointing him such referee, and thereby conferring upon and vesting him with such power and authority. Miller was not, at the time of the alleged slander, and had not been authorized or empowered to administer, as referee in the action aforesaid, an oath or affirmation to the plaintiff or any other person; and the alleged oath, purporting and averred in the complaint to have been taken by the plaintiff and administered by said Miller, was not legally administered, and was not a binding oath or obligation. The plaintiff was not under the obligation of an oath, and therefore cannot be indicted for perjury. While it is a question of fact for a jury whether words charged were spoken of and concerning alleged testimony, it is a question of law whether, if such alleged testimony be false, it amounts to perjury; and if it does not, then perjury is not imputed. The test is whether, if false, he can be indicted for perjury. (*Rouse* v. *Ross,* 1 *Wend.* 475, 477. *Bullock* v. *Koon,* 4 *id.* 531, 536. *Roberts* v. *Champlin,* 14 *id.* 120, 121, 122.) (3.) A referee in an action pending in the city court of Brooklyn has out of the city of Brooklyn no jurisdiction of the case, and cannot within the city of New York legally sit as a court, administer oaths to witnesses in, or hear or try such case, or otherwise exercise authority as such referee; and an oath administered, or purporting to be administered, within the city of New York, or elsewhere out of the city of Brooklyn, by such referee, in capacity of referee, to a witness, would be extra-judicial and a nullity. The city court of Brooklyn is a court of special and limited jurisdiction, and is, by the act creating said court, required to be held at the city hall in the city of Brooklyn. (*Laws of* 1849, *p.* 171, § 10. *Laws of* 1850, *p.* 149, § 5.) The said city court cannot itself legally hold a court nor legally administer an oath within the city of New York. That court cannot confer upon or delegate to a

referee other or greater powers or authority than the court it₌ self possesses; nor is the jurisdiction of a referee more enlarged or extended than that of the court appointing him. (4.) The alleged testimony of and concerning which it is alleged the words charged were spoken, is not shown to be material, and the *onus* is on the plaintiff to show it. One witness (the plaintiff) says, "I can't remember the words I had made use of when I was interrupted," nor "whether the testimony I gave that day was on the subject of a contract only." Another witness says, "I don't recollect his testimony, or whether direct or cross." So much of the evidence must be proved as to show its materiality. (*Bullock* v. *Koon*, 9 *Cowen*, 30.) The proof should be of the evidence at large, or specifically by the minutes of the testimony, or otherwise, to enable the court to judge of its materiality. The evidence has not been proved, and testimony as to the general character of the evidence is not sufficient, and much less when of a part only. The plaintiff must show affirmatively that the testimony was material; and failing to do so, the plaintiff has not laid a foundation for a recovery. (*Crookshank* v. *Gray and wife*, 20 *John.* 344, *Rouse* v. *Ross*, 1 *Wend.* 475, 477. *Bullock* v. *Koon*, 9 *Cowen*, 30. *Roberts* v. *Champlin*, 14 *Wend.* 120, 121, 122.)

III. The court below erred in admitting testimony touch⸗ ing the memorandum on the calendar of causes. (1.) Such calendar is not a record of the court. (2.) There is no competent or adequate proof as to when such memorandum was made. (3.) Such memorandum is not of itself an order, and confers no power or authority to act as referee. The court below erred in denying the defendant's motion for a nonsuit.

*D. P. Barnard*, for the respondent. I. There was no doubt of the reference to L. K. Miller of the action on contract between the same parties. The record is conclusive on that point.

II. The words set forth in the complaint were actionable if they referred to the plaintiff and his testimony, as the jury

Bonner *v.* McPhail.

by their verdict found that he meant to impute to the plaintiff the crime of perjury. (*McClaughry* v. *Wetmore*, 6 *John. R.* 82.)

III. The city court of Brooklyn had jurisdiction of that action, and it was not illegal for the referee to take testimony in New York if both parties consented to it. Such consent is to be presumed, as no objection appears to have been made.

LOTT, P. J. The words charged to have been spoken by the defendant were not actionable in themselves. It was therefore incumbent on the plaintiff to show that they were spoken in reference to a judicial proceeding, before a court or officer of competent jurisdiction. This he has failed to do. Assuming that the charge related to the testimony given by the plaintiff in an action tried before Mr. Miller acting as referee, and that such testimony was material and pertinent, yet an additional fact was necessary to be established. It appears that the action in which the proceeding was had was pending in the city court of Brooklyn, and was triable only before the court and a jury, unless it was legally referred to a referee duly appointed, for trial. It was a case in which the examination of a long account was involved, and was therefore properly referable, and there is no doubt that the parties had agreed previous to the trial, by an oral consent, that the issues should be tried and determined by Mr. Miller as referee. His acts under such agreement, although binding on the parties, so far as relates to the judgment rendered, did not constitute him an officer or tribunal clothed with the legal power of administering a judicial oath. That power could only be derived from an order of the court appointing him such referee. (*See Code*, § 421.) No such order had been made at the time the words charged to have been uttered were spoken. The memorandum, "referred to L. K. Miller," made by the judge on his calendar of March, 1857, was not sufficient to constitute an order. An entry at least in the minutes of the court was required for that purpose. Some action of the

court, shown by its records, was necessary. The order subse-
quently made, in December, *nunc pro tunc*, on the consent of
the parties, does not obviate the difficulty presented in this case.

That was proper to perfect the record in the action, and to
obviate any objections that might be made by either party to
the acts and decision of the referee, but could not relate back,
so as to charge third parties with liabilities, or to give an
extra-judicial oath the effect of an oath legally administered,
on which the charge of perjury could be sustained. Such an act
would be subject to all the objections of an *ex post facto* law.

If, therefore, it be conceded that what the plaintiff stated
before the referee was in fact false and material to the issue
involved, yet he could not be chargeable with the crime of
perjury. The plaintiff's action was consequently not main-
tainable.

Another objection raised by the defendant appears to be
equally fatal, even if it be conceded that Mr. Miller was le-
gally appointed a referee, and that an oath had been duly ad-
ministered to the plaintiff in the city of Brooklyn, before his
examination was commenced. It appears that the testimony
was in fact given in the city of New York. The action in
which it was taken was pending in the city court of Brooklyn.
That court was a court of special and limited jurisdiction,
and is to be held in the city of Brooklyn. (*Laws of* 1849,
*p.* 171, § 10. *Laws of* 1850, *p.* 149, § 5.) It was incompe-
tent, therefore, for the court itself to sit in the city of New
York. Any trial had there would be extra-judicial. It would
have no greater effect than if it were held out of the state;
and as the court had no special authority vested in it to con-
fer on a referee the power to try a cause out of its own juris-
diction, no such power could be rightfully and legally exercised
by him. He at most could only be considered as a judge of
the court, for the time being, in the particular suit in which
he was appointed, authorized to act to the same extent and
in the same manner, and not otherwise, than the court itself.

In either view of the case the plaintiff has no cause of ac-

tion. It is therefore unnecessary to consider the questions raised during the progress of the trial as to the rejection or admissibility of evidence.

The order of the city court, refusing a new trial, and the judgment in favor of the plaintiff, were erroneous and must be reversed, and a new trial ordered, with costs to abide the event.

BROWN, J. The slanderous words set out in the complaint, and which the defendant is charged with having published, are not actionable in themselves. They may become so, however, by reference to the extrinsic circumstances in relation to which they were spoken. These are, that at the time the words were spoken, the plaintiff was being examined as a witness, upon the trial of an action then pending, upon a question material to the issue, and before a court or officer having authority and jurisdiction to administer oaths and to conduct the inquiry or proceeding in which the plaintiff was sworn. Of this principle the pleader who framed the complaint seems to have been fully aware ; for it alleges "that on or about the 25th day of September last, (1857,) the plaintiff was being examined under an oath taken by him and administered by L. K. Miller, Esquire, a referee duly appointed by this court, (the city court of Brooklyn,) to hear and determine the issues in a certain action then pending in said court between the above named plaintiff and the above named defendant, and whilst giving testimony as a witness in said action, which testimony was material for him as plaintiff in said action, the defendant then and there, to wit, at the office of the referee, on the corner of Broadway and John street, in the city and county of New York, in the presence and hearing," &c. spoke and published, of and concerning the plaintiff and his testimony, the alleged slanderous words, which were, "you are a liar," and "to hear a man lie," which are stated with the necessary innuendoes and averments. The words uttered, with reference to the surrounding circumstances, must have

imputed the crime of perjury to the plaintiff, or the action will not lie. To this end the court or officer before whom the action was pending must have had jurisdiction of the subject matter of it, with power to administer an oath and to examine and take the testimony of the witness; for unless the court or officer had such jurisdiction and power, there could be no legal perjury committed, however false and malicious may have been the statements of the witness. (*Crookshank* v. *Gray*, 20 *John.* 344. *Bullock* v. *Koon*, 9 *Cowen*, 30.)

Upon the trial of this action the plaintiff proved the speaking of the words charged, and under the circumstances mentioned in the complaint. He then produced the record in the action of *Bonner* against *McPhail*, in the city court of Brooklyn, in which the plaintiff was being examined as a witness, and in reference to which examination the words were spoken. This was not a formal record made up in the old form with a caption, an entry of the pleadings, an award of a venire or an ·order of reference, a verdict or report, and the judgment of the court duly entered thereon in regular chronological order. But the record produced consisted of the complaint and answer, separately. An order of reference to Livingston K. Miller, the caption of which was at a term of the city court of Brooklyn, at the city hall, on the first Monday of March, 1857, with a written consent at the bottom, signed by the attorneys, that the same might be entered *nunc pro tunc*. There was also the report of the referee, and an order for judgment thereon, dated December 31st, 1857. The plaintiff also examined Samuel E. Harris as a witness, who produced the order book of the court, and testified that he was the clerk of the city court; that the order of reference in *Bonner* v. *McPhail*, referred to, was not entered until on or after the 12th December, 1857. That the date of the order next before the order in question, as entered in the book, was December 12th, 1857. So that the order in question must have been entered on or after that day. He also produced the calendar for the March term, 1857, on which there was a memorandum in the judge's handwrit-

ing, "referred to L. K. Miller," but to what the entry referred, or when made, did not appear. He also said there was no entry in the minutes of court of an order of reference in the action of *Bonner* v. *McPhail.* It therefore appeared affirmatively, upon the plaintiff's own proof, that on the 25th of September, 1857, the time when the plaintiff, Bonner, was examined as a witness and the words were uttered, Livingston K. Miller was not a referee in the action. No order had been entered upon the minutes of the court, to that effect. It does not appear that any such motion had been made, or that even a written stipulation had been entered into by the attorneys for the respective parties, by which he was to become such referee. His appointment was vested in parol, if it existed at all, and gave him no sort of authority to administer oaths and examine witnesses. His acts as such were extra-judicial. The omission to obtain the order of reference, before the referee proceeded to hear the cause, was doubtless an irregularity, which the parties to the action in which it was committed might waive or correct by stipulation, so as to give effect to the report. An order entered *nunc pro tunc* would do this, but nothing more. If what Bonner, the witness, said on the 25th September was not perjury, by reason that Livingston K. Miller had no power to administer an oath in an action pending in the city court of Brooklyn, it could not be made perjury by any thing which the attorneys or the court might do after that time. Courts of justice speak only through their records, orders, and entries upon their journals or minutes ; and before a person can be clothed with the powers and authority of a referee in a pending action and proceed to execute its functions, there must be the fiat of the court signified by an entry or order upon its minutes. The 49th section of the act for consolidating and referring causes, (2 *R. S.* 305,) declares that an entry of such reference shall be made upon the record, and day shall be given to the parties, from time to time, until the referees report, or they be thereof discharged. When depositions are used as the foundation of an indictment for

Bonner *v.* McPhail.

perjury, the authority under which they are taken must be proved with more strictness than in other cases. If the oath was administered under a special authority or commission directed to a particular person for that purpose, the commission, shown in some form, is indispensable. (*Cowen & Hill's Notes*, 1100; *note* 756, *and the authorities referred to by them*.) Referees are vested for the time being, and in respect to the particular action in which they sit, with some of the most important powers of the court. They may administer oaths, compel the attendance of witnesses, take their testimony, issue attachments and punish for contempts, allow amendments to pleadings, determine questions of law as well as of fact, and make reports upon which judgments may be entered. The validity of these acts depends exclusively upon the existence and force of the rule or order under which they derive their authority. No referee should proceed a step in the exercise of his duties, without a certified copy of the rule or order in his hands. This is his commission, and without it he should not proceed to act.

The city court of Brooklyn is a local court, with jurisdiction limited to the bounds of the city. The hearing before the referee was had at his office at the corner of Broadway and John street, in the city of New York, and the oath was administered there. The defendant claims that therefor the proceeding was *coram non judice* and void. I decline to consider the force of this objection, because the defect already considered is fatal to the plaintiff's right of action.

The motion made by the defendant for a nonsuit, at the close of the plaintiff's evidence, should have been granted. And for the refusal to grant it, the judgment should be reversed and a new trial granted, with costs to abide the event.

EMOTT, J. concurred.

New trial granted.

[KINGS GENERAL TERM, February 13, 1860. *Lott, Emott* and *Brown*, Justices.]